IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ABIRA MEDICAL LABORATORIES, LLC,

Plaintiff,

v.

FREEDOM LIFE INSURANCE COMPANY
OF AMERICA,

Defendant.

CIVIL ACTION
NO. 24-2110

## OPINION

**Slomsky, J.**                                              **January 10, 2025**

### TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 3

II.  BACKGROUND ................................................................................................ 4

III. STANDARD OF REVIEW ................................................................................ 6

IV.  ANALYSIS ........................................................................................................ 7

A.   The Court Lacks General Personal Jurisdiction Over Defendant ................................... 7

  1.  Plain Language of Statutes Shows That Defendant Did Not Consent
      to General Personal Jurisdiction in Pennsylvania .............................................. 9

    a.   42 Pa. Cons. Stat. § 5301 ........................................................................ 9

    b.   15 Pa. Cons. Stat. § 411 ........................................................................ 10

    c.   40 P.S. Insurance § 46 .......................................................................... 11

    d.   Section 46 Only Provides for Jurisdiction in Pennsylvania Over Foreign
         Insurance Companies in Certain Cases ...................................................... 13

  2.  Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co. and Mallory
      v. Norfolk S. Railway Co. Do Not Support Plaintiff's Argument That Defendant
      Consented to General Personal Jurisdiction in Pennsylvania ............................... 16

**B.**    **The Court Lacks Specific Personal Jurisdiction Over Defendant** ................................. 19

**V.**    **CONCLUSION** ........................................................................................................ 23

## I.    INTRODUCTION

Before the Court is an important issue of first impression:  whether a foreign insurance company consents to general personal jurisdiction in Pennsylvania to be sued by a private party on its own behalf for any cause of action when it obtains a Certificate of Authority issued pursuant to Pennsylvania statute 40 P.S. § 46.[1]  A Certificate of Authority licenses a foreign insurance company to do insurance business in Pennsylvania.  See 40 PA. STAT. AND CONS. STAT. § 46(a). But whether it carries with it a foreign insurance company's consent to be sued by a private party on its own behalf in Pennsylvania in any case is an open question.  For reasons set forth below, the Court answers this question in the negative:  there is no general personal jurisdiction over a foreign insurance company sued by a private party on its own behalf in any case in Pennsylvania.

---

[1]    40 P.S. § 46 provides in pertinent part:

> (a) No insurance company, association, or exchange of another state or foreign government shall do an insurance business within this Commonwealth without first having obtained a certificate of authority from the Insurance Commissioner authorizing such company, association or exchange to do such business. . . .
>
> ***
>
> (d)(1) The performance by an insurance company, association, or exchange of another state or foreign government of any act which constitutes the doing of an insurance business within this Commonwealth is equivalent to and shall constitute an appointment by such company, association or exchange of the Secretary of the Commonwealth and his successor or successors in office as its true and lawful attorney upon whom may be served all lawful process in any action, suit or proceeding instituted by or on behalf of the Insurance Commissioner against it arising out of a violation of this section, and the performance of any such act shall be signification of its agreement that such service of process is of the same legal force and validity as personal service of process in this Commonwealth upon such company, association, or exchange.

40 PA. STAT. AND CONS. STAT. § 46 (emphasis added).

In this case, Defendant Freedom Life Insurance Company of America ("Defendant") filed a Motion to Dismiss the First Amended Complaint, arguing that it did not consent in this case to general personal jurisdiction over it in Pennsylvania by obtaining a Certificate of Authority. Because the Court finds that Defendant did not consent in this case to general personal jurisdiction in Pennsylvania by obtaining a Certificate of Authority issued pursuant to 40 P.S. § 46, and because the Court also lacks specific personal jurisdiction over it, Defendant's Motion to Dismiss the First Amended Complaint (Doc. No. 8) will be granted.

## II.    BACKGROUND

Defendant is a foreign insurance company that holds a Certificate of Authority issued by the Pennsylvania Department of Insurance, authorizing it to conduct insurance business in Pennsylvania.  (Doc. No. 6 at ¶ 5.)  Plaintiff Abira Medical Laboratories, LLC, doing business as Genesis Diagnostics ("Plaintiff"), is a licensed medical testing laboratory that performs clinical laboratory, pharmacy, genetics, addiction rehabilitation, and COVID-19 testing services at its facilities located in Bucks County, Pennsylvania.  (Id. at ¶ 10.)  Plaintiff provides these laboratory testing services to Defendant's insured members, among others, as an out-of-network provider.  (Id. at ¶ 4.)

As described in the Amended Complaint, unnamed medical service providers collected specimens from patients around the United States and sent the specimens to Plaintiff for laboratory testing services.  (Id. at ¶ 10.)  Over one hundred (100) patients for whom Plaintiff performed the laboratory testing are alleged to be insured by Defendant.  (Id. at 10, Ex. 1.)  Along with the requests for testing services, the medical service providers sent Plaintiff an "assignment of benefits" form executed by each patient insured by Defendant.  (Id. at ¶ 11.)  The assignment of benefits forms sent to Plaintiff cover the patients' right to payment for laboratory testing services

owed to the patients under their insurance plans with Defendant.  (Id. at ¶ 18.)  Along with the right to payment, the assignments of benefits also transferred to Plaintiff the patients' right to sue Defendant for payment.  (Id.)

Based on these assignments of benefits, Plaintiff billed Defendant for laboratory testing services it performed on specimens provided by Defendant's insured members.  (See id. at ¶ 13.)  Thereafter, Defendant either failed to respond to Plaintiff's requests for payment or denied the requests.  (Id. at ¶¶ 14-15.)  As a result, on March 30, 2024, Plaintiff filed the Complaint against Defendant in the Court of Common Pleas of Bucks County, Pennsylvania, alleging that Defendant owed Plaintiff approximately $246,403 for laboratory testing services.  (Id. at ¶ 23; Doc. No. 4.)

On May 16, 2024, Defendant filed a Notice of Removal, removing the case from state court to this Court based on diversity of citizenship jurisdiction.  (Doc. No. 1.)  On July 5, 2024, Plaintiff filed a First Amended Complaint.  (Doc. No. 6.)  The First Amended Complaint asserts four (4) claims against Defendant:  (1) breach of contract (Count I); (2) breach of the implied covenant of good faith and fair dealing (Count II); (3) violation of the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, and Economic Security Act (Count III); and (4) an alternative claim for quantum meruit (Count IV).  (See id.)

On July 19, 2024, in response to the First Amended Complaint, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).[2]  (See Doc. No. 8.)  On August 2, 2024, Plaintiff filed a Response

---

[2]  Federal Rule of Civil Procedure 12(b) provides in relevant part as follows:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> (1) lack of subject-matter jurisdiction;

in Opposition to Defendant's Motion. (Doc. No. 9.) On August 9, 2024, Defendant filed a Reply in Support of its Motion. (Doc. No. 10.) On October 2, 2024, the Court held a hearing on the Motion. On November 19, 2024, both parties filed Supplemental Memoranda in support of their respective positions on Defendant's Motion. (Doc. Nos. 17, 18.) Defendant's Motion to Dismiss Plaintiff's First Amended Complaint is now ripe for disposition.

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides that a motion to dismiss a complaint may be filed when the court does not have personal jurisdiction over a defendant. "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007) (citation omitted). To show personal jurisdiction, the plaintiff may rely on the allegations in the complaint, affidavits, or other evidence. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation and citation omitted). However, to "survive a Rule 12(b)(2) motion to dismiss, a plaintiff may not merely rely on the allegations in its complaint." Deardorff v. Cellular Sales of Knoxville, Inc., Civil Action No. 19-2642-KSM, 2020 WL 5017522, **1-2 (E.D. Pa. Aug. 25, 2020) (emphasis in the original) (citation omitted). If the court "does not conduct [an] evidentiary hearing . . . [the] plaintiff need only plead [a] prima facie case" of jurisdiction to defeat a motion to dismiss. Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citations omitted). In deciding a

---

(2) lack of personal jurisdiction;

\*\*\*

(6) failure to state a claim upon which relief can be granted; . . .

Fed. R. Civ. P. 12(b). Because the Court concludes that it lacks personal jurisdiction over Defendant, it need not address Defendant's arguments for dismissal of the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

motion to dismiss for lack of personal jurisdiction, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Id. (citations omitted).

## IV.    ANALYSIS

In its Motion to Dismiss the First Amended Complaint, Defendant makes three arguments: (1) Plaintiff does not have standing pursuant to Federal Rule of Civil Procedure 12(b)(1); (2) this Court does not have personal jurisdiction over it pursuant to Federal Rule of Civil Procedure 12(b)(2); and (3) the Amended Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (See Doc. No. 8-1.)  Because the Court concludes, infra, that it lacks personal jurisdiction over Defendant, it need not reach Defendant's standing and failure to state a claim arguments pursuant to Rule 12(b)(1) and 12(b)(6), respectively.  "Personal jurisdiction may be either general or specific."  General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). Here, the Court lacks both general and specific personal jurisdiction over Defendant and will address each in turn.

### A.    The Court Lacks General Personal Jurisdiction Over Defendant

A court may exercise general personal jurisdiction over a nonresident party when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (citations omitted).  "For a corporation, 'the place of incorporation and principal place of business' are where it is 'at home' and are, therefore, the paradigm bases for general jurisdiction."  Malik v. Cabot Oil & Gas Corp., 710 F.App'x 561, 563 (3d Cir. 2017) (citing Daimler, 134 571 U.S. at 127).  Here, Defendant is incorporated in and has its principal place of business in Texas.  (Doc. No. 8-1 at 13 n. 4.) Accordingly, it is not "at home" in Pennsylvania.

However, general jurisdiction can also arise if the defendant consents to the exercise of jurisdiction over it in the forum state.  See Bane v. Netlink, Inc., 925 F.2d 637, 641 (3d Cir. 1991)

("Consent is a traditional basis for assertion of jurisdiction long upheld as constitutional.") "Consent to general jurisdiction comes in different forms, e.g., in a forum selection clause, by making an appearance and arguing the merits of the case in court, or, in Pennsylvania, as prescribed in 42 Pa. Cons. Stat. § 5301." Gorton v. Air & Liquid Systems Corp., 303 F. Supp. 3d 278, 295 (M.D. Pa. 2018).

As explained more thoroughly below, 42 Pa. Cons. Stat. § 5301 ("Section 5301" or "§ 5301") provides that Pennsylvania courts have jurisdiction over corporations that are qualified as foreign corporations under Pennsylvania law.  42 PA. CONS. STAT. § 5301.  One such way corporations qualify as foreign corporations under Pennsylvania law is by registering to do business in Pennsylvania under another statute, 15 Pa. Cons. Stat. § 411 ("Section 411" or "§ 411"). See 15 PA. CONS. STAT. § 411 ("[A] foreign filing association or foreign limited liability partnership may not do business in this Commonwealth until it registers with the department under this chapter.")  The "department" is the Pennsylvania Department of State, not the Insurance Department.  Therefore, by registering to do business in Pennsylvania pursuant to § 411, a foreign corporation consents to general personal jurisdiction in Pennsylvania. See Mallory v. Norfolk S. Railway Co., 600 U.S. 122, 135 (2023) (recognizing that when a foreign corporation registers to do business in Pennsylvania under § 411, it consents to Pennsylvania's exercise of general personal jurisdiction over it); see also Bane, 925 F.2d at 640 ("[R]egistration by a foreign corporation carries with it consent to be sued in Pennsylvania courts.")

Here, Plaintiff argues that Defendant has consented to general personal jurisdiction in Pennsylvania on any claim because it applied for and received a Certificate of Authority to do insurance business in Pennsylvania pursuant to 40 P.S. § 46 ("Section 46" or "§ 46").  (Doc. No. 6 at ¶ 7.)  To support this argument, Plaintiff relies on United States Supreme Court decisions

Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co., 243 U.S. 93 (1917) and Mallory v. Norfolk S. Railway Co., 600 U.S. 122 (2023).  (Doc. No. 9 at ¶¶ 20-21.)  In response, Defendant asserts that the language of § 46 on the issuance of a Certificate of Authority does not support the conclusion that it has consented to general jurisdiction in Pennsylvania on any claim.  (Doc. No. 17 at 5.)  Because the plain language of § 5301 and § 411 when compared to § 46 makes clear that obtaining a Certificate of Authority pursuant to § 46 does not carry with it a consent to general personal jurisdiction in Pennsylvania on any claim brought by a private party on its own behalf, and because Pennsylvania Fire and Mallory do not support such a conclusion, this Court does not have general personal jurisdiction over Defendant.

> **1.    Plain Language of Statutes Shows That Defendant Did Not Consent to General Personal Jurisdiction in Pennsylvania**

Because the issue of whether obtaining a Certificate of Authority pursuant to § 46 carries with it a consent to general personal jurisdiction in Pennsylvania in any case brought by a private party on its own behalf is ultimately an issue of statutory interpretation, the Court will begin "where all such inquiries must begin:  with the language of the statute[s] [themselves]."  Republic of Sudan v. Harrison, 587 U.S. 1, 8 (2019); see also Jensen v. Pressler & Pressler, 791 F.3d 413, 418 (3d Cir. 2015) (holding a court's "task [in interpreting a statute] begins and ends with the text of the statute unless the text is ambiguous or does not reveal congressional intent 'with sufficient precision' to resolve our inquiry").

> **a.    42 Pa. Cons. Stat. § 5301**

Section 5301 is a section of Pennsylvania's long-arm statute.  It is titled "Persons" and is found in in Title 42, Pennsylvania Consolidated Statutes, which has the heading "Judiciary and Judicial Procedure."  As relevant here, it provides the following:

(a) General rule.--The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:

\*\*\*

    (2) Corporations.--
        (i) Incorporation under or <u>qualification as a foreign corporation under the laws of this Commonwealth</u>.
        (ii) Consent, to the extent authorized by the consent.
        (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

(b) Scope of jurisdiction.--When jurisdiction over a person is based upon this section <u>any cause of action may be asserted against him</u>, whether or not arising from acts enumerated in this section. Discontinuance of the acts enumerated in subsection (a)(2)(i) and (iii) and (3)(i) and (iii) shall not affect jurisdiction with respect to any act, transaction or omission occurring during the period such status existed.

42 PA. CONS. STAT. § 5301 (emphasis added). In other words, § 5301 provides for general personal jurisdiction in Pennsylvania over a number of enumerated persons, including corporations that are qualified as a foreign corporation under the laws of Pennsylvania.[3] See 42 PA. CONS. STAT. § 5301(a)(2)(i). Importantly, if a foreign corporation is qualified as such under Pennsylvania law, <u>any cause of action</u> may be brought against it in Pennsylvania. See 42 PA. CONS. STAT. § 5301(b).

### b.    15 Pa. Cons. Stat. § 411

Section 411, titled "Registration to do business in this Commonwealth," is found in Title 15, Pennsylvania Consolidated Statutes, which has the heading "Corporations and Unincorporated Associations." It provides in pertinent part as follows:

(a) Registration required.--Except as provided in section 401 (relating to application of chapter) or subsection (g), a foreign filing association or foreign

---

[3]    For the purposes of § 5301, corporations are included in the definition of "persons." See 42 PA. CONS. STAT. § 5301.

limited liability partnership may not do business in this Commonwealth until it registers with the department under this chapter.

\*\*\*

(f) Registered office.--Subject to section 109 (relating to name of commercial registered office provider in lieu of registered address), every registered foreign association shall have, and continuously maintain, in this Commonwealth a registered office, which may but need not be the same as its place of business in this Commonwealth.

(g) Foreign insurance corporations.--A foreign insurance corporation is not required to register under this chapter.

15 PA. CONS. STAT. § 411.  Under this Section, with the exception of foreign insurance companies, any foreign corporation wishing to do business in Pennsylvania must register with the Pennsylvania Department of State.  See 15 PA. CONS. STAT. § 411(a).  Importantly, part of § 411's registration requirement is the condition that the foreign corporation establish and maintain a registered office in Pennsylvania.  See 15 PA. CONS. STAT. § 411(g).  Moreover, as explained in the Committee Comment to § 411, subsection (g) exempts foreign insurance companies from registering under § 411 because "[i]f a foreign insurance corporation conducts an insurance business in Pennsylvania, it must [instead] obtain a certificate of authority from the Insurance Department under Section 208 of the Insurance Department Act of 1921, 40 P.S. § 46."  15 PA. CONS. STAT. § 411 committee cmt. (2014).

### c.    40 P.S. § 46

Section 46, titled "Certificates of authority to do business," is found in Title 40, Pennsylvania Statutes, under the heading "Insurance," which is the Pennsylvania's Insurance Department Act.  It provides in pertinent part as follows:

(a) No insurance company, association, or exchange of another state or foreign government shall do an insurance business within this Commonwealth without first having obtained a certificate of authority from the Insurance Commissioner authorizing such company, association or exchange to do such business. . . .

11

(b) Any of the following acts constitute the doing of an insurance business within this Commonwealth, whether effected by mail or otherwise:

(1) the issuance or delivery of contracts of insurance to persons resident in this Commonwealth, or
(2) the solicitation of applications for such contracts, or other negotiations preliminary to execution of such contracts, or
(3) the collection of premiums, membership fees, assessments or other consideration for such contracts, or
(4) the transaction of matters subsequent to execution of such contracts and arising out of them.

\*\*\*

(d)(1) The performance by an insurance company, association, or exchange of another state or foreign government of any act which constitutes the doing of an insurance business within this Commonwealth is equivalent to and shall constitute an appointment by such company, association or exchange of the Secretary of the Commonwealth and his successor or successors in office as its true and lawful attorney upon whom may be served all lawful process in <u>any action, suit or proceeding instituted by or on behalf of the Insurance Commissioner against it arising out of a violation of this section</u>, and the performance of any such act shall be signification of its agreement that such service of process is of the same legal force and validity as personal service of process in this Commonwealth upon such company, association, or exchange.

40 PA. STAT. AND CONS. STAT. § 46 (emphasis added).

Simply put, § 46 requires foreign insurance companies wishing to do insurance business in Pennsylvania to obtain a Certificate of Authority from Pennsylvania's Department of Insurance. <u>See</u> 40 PA. STAT. AND CONS. STAT. § 46(a).  If a foreign insurance company does so, § 46 allows for any action arising out of a violation of § 46 that is instituted by or on behalf of the Insurance Commissioner to be brought against the foreign insurance company in Pennsylvania.  <u>See</u> 40 PA. STAT. AND CONS. STAT. § 46(d)(1).

As discussed <u>infra</u>, because the instant action was not instituted by or on behalf of the Insurance Commissioner arising out of a violation of § 46, but was filed by a private party on its own behalf, the grant of jurisdiction over a foreign insurance company provided for in § 46 is

inapplicable here.  A foreign insurance company violates § 46 by performing insurance business in Pennsylvania without having obtained a Certificate of Authority.  See 40 PA. STAT. AND CONS. STAT. § 46(b).  But the instant case is essentially a breach of contract action brought by a licensed medical testing laboratory business.[4]  (See Doc. No. 6.)  As such, nothing in § 46 allows the claims asserted here to be brought in Pennsylvania against Defendant by a private organization.[5]

### d.    Section 46 Only Provides for Jurisdiction in Pennsylvania Over Foreign Insurance Companies in Certain Cases

As mentioned above, the plain language of § 46 compared to the language of § 5301 and § 411 make clear that obtaining a Certificate of Authority pursuant to § 46 only carries with it consent to jurisdiction in Pennsylvania for certain cases.  Section 5301 states that any corporation qualified as a foreign corporation under the laws of Pennsylvania is subject to general jurisdiction in Pennsylvania in "any cause of action that may be asserted against [it]."  See 42 PA. CONS. STAT. § 5301(b) (emphasis added).  Similarly, § 411 requires foreign corporations registering to do business in Pennsylvania to establish and maintain a registered office in Pennsylvania.  See 15 PA. CONS. STAT. § 411(f).  No such requirement applies to foreign insurance companies.  See generally 40 PA. STAT. AND CONS. STAT. § 46.

---

[4]  As noted above, the First Amended Complaint asserts four (4) causes of action against Defendant:  (1) breach of contract (Count I); (2) breach of the implied covenant of good faith and fair dealing (Count II); (3) violation of the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, and Economic Security Act (Count III); and (4) an alternative claim for quantum meruit (Count IV).  (Doc. No. 6.)

[5]  Section 46(b)(4) provides that "the transactions of matters subsequent to execution of such contracts [i.e. insurance contracts] and arising out of them" is "doing insurance business," a term referred to in § 46(d)(1).  No court decision, however, could be located in which a private party was allowed to sue a foreign insurance company on behalf of the Insurance Commissioner for breach of an insurance policy to collect payment for services rendered to an insured under the policy, even when the private party had an assignment of benefits.  In this situation too, there is no general personal jurisdiction over the foreign insurance company because such a suit is not authorized by § 46.

The Supreme Court has recognized one of the implications of a foreign corporation establishing a registered office in a state is that the corporation is agreeing to be subject to <u>any suit</u> in that state's courts. <u>See</u> <u>Mallory</u>, 600 U.S. at 135 (recognizing that by registering to do business in Pennsylvania pursuant to § 411, the defendant corporation was required to establish a registered office in Pennsylvania, meaning the defendant agreed "to be found in Pennsylvania and answer any suit there"). In other words, by establishing and maintaining a registered office in Pennsylvania, a foreign corporation agrees to be subject to <u>any suit</u> in Pennsylvania. <u>See</u> <u>id.</u> at 141 ("[The defendant] had registered to do business in Pennsylvania for many years. It had established an office for receiving service of process. It had done so pursuant to a statute that gave the company the right to do business in-state in return for agreeing to answer any suit against it.")

In contrast, § 46 does not contain language indicating a foreign insurance company that obtains a Certificate of Authority under it has consented to jurisdiction in Pennsylvania on any suit brought by a private party on its own behalf. Instead, § 46 explicitly limits jurisdiction over these foreign insurance companies to certain suits brought by certain parties. Specifically, § 46 allows for jurisdiction over foreign insurance companies in "any action, suit, or proceeding instituted by or on behalf of the Insurance Commissioner against it arising out of a violation of this section." <u>See</u> 40 PA. STAT. AND CONS. STAT. § 46(d)(1). Put differently, § 46 only permits foreign insurance companies to be sued in Pennsylvania for violations of § 46 in actions instituted by or on behalf of the Insurance Commissioner. And, as noted above, a foreign insurance company violates § 46 by performing insurance business in Pennsylvania without having obtained a Certificate of Authority.

This difference in language between § 5301, § 411, and § 46 is telling. Had the Pennsylvania legislature intended foreign insurance companies that obtain a Certificate of

14

Authority under § 46 to consent to being subject to <u>any suit</u> in Pennsylvania, it would not have included language in § 46 expressly limiting jurisdiction to suits instituted by or on behalf of the Insurance Commissioner arising out of a violation of § 46.  <u>See</u> <u>In re Federal-Mogul Global Inc.</u>, 684 F.3d 355, 373 (3d Cir. 2012) ("[W]ell-established principles of statutory interpretation militate against assimilating the two sections where [the legislature] employed different words. '[W]here the legislature has inserted a provision in only one of two statutes that deal with closely related subject matter, it is reasonable to infer that the failure to include that provision in the other statute was deliberate rather than inadvertent.'")  As Defendant put it, "[t]he legislature wrote these statutes deliberately, and the inclusion of a jurisdictional provision that applies to all lawsuits in one statute and another [statute] that limits jurisdiction to claims involving the Insurance Commissioner means the legislature intended to produce different results."  (Doc. No. 17 at 6.)

Moreover, basic principles of statutory construction regarding interpretation of conflicting statutes make clear that § 5301's grant of broad general personal jurisdiction over corporations "qualifi[ed] as a foreign corporation under the laws of this Commonwealth" to be sued for any cause of action does not override § 46's narrow grant of jurisdiction over foreign insurance companies in possession of a Certificate of Authority to be sued only for violations of § 46.  "It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum. 'Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.'"  <u>Radzanower v. Touche Ross & Co.</u>, 426 U.S. 148, 153 (1976) (quoting <u>Morton v. Mancari</u>, 417 U.S. 535, 550-51 (1974)).

Here, because § 46 deals with the narrow, precise, and specific subject matter of foreign insurance companies obtaining Certificates of Authority, it is a specific statute.  <u>See</u> 40 PA. STAT.

AND CONS. STAT. § 46. Conversely, § 5301, which broadly provides for general jurisdiction over specific individuals, corporations, and entities, is a general statute. See 42 PA. CONS. STAT. § 5301. As such, because § 46 is a specific statute and § 5301 is a general statute, § 46 "will not be controlled or nullified by" § 5301. See Morton, 417 U.S. at 550-51. In other words, § 46's narrow allowance of general personal jurisdiction over foreign insurance companies in specifically defined cases that can be brought by or on behalf of the Insurance Commissioner is not overcome by § 5301's broad grant of jurisdiction over companies qualified as foreign corporations in Pennsylvania.

> **2.    Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co. and Mallory v. Norfolk S. Railway Co. Do Not Support Plaintiff's Argument That Defendant Consented to General Personal Jurisdiction in Pennsylvania**

As mentioned above, in arguing that Defendant consented to general personal jurisdiction in Pennsylvania by obtaining a Certificate of Authority pursuant to § 46, Plaintiff relies on United States Supreme Court decisions Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co., 243 U.S. 93 (1917) and Mallory v. Norfolk S. Railway Co., 600 U.S. 122 (2023). (Doc. No. 9 at ¶¶ 20-21.) But because the Missouri statute at issue in Pennsylvania Fire and § 411, the Pennsylvania statute at issue in Mallory, differ from § 46 in one key aspect, namely the scope of jurisdiction provided for in each statute, Plaintiff's reliance on these cases to support its argument that Defendant consented to general personal jurisdiction in Pennsylvania is misplaced.

In Pennsylvania Fire, the Court considered whether it was consistent with the Due Process Clause of the Fourteenth Amendment for a Missouri court to hear a case regarding a policy of insurance issued in Colorado by an Arizona insurance company insuring buildings in Colorado. Pennsylvania Fire, 243 U.S. at 94. There, the Court noted that the "defendant insurance company had obtained a license to do business in Missouri," which included filing with the Missouri

16

Department of Insurance "a power of attorney consenting that service of process upon the [Department's] superintendent should be deemed personal service upon the company." Id. Critically, the Missouri statute under which the defendant obtained a license to do business "required any out-of-state insurance company 'desiring to transact any business' in the State to file paperwork agreeing to (1) appoint a state official to serve as the company's agent for service of process, and (2) accept service on that official as valid in any suit." See Mallory, 600 U.S. at 132 (emphasis added) (summarizing the facts of Pennsylvania Fire). Thus, because the defendant had appointed an agent in Missouri to accept service of process in any suit, the Court held that the defendant had consented to Missouri's exercise of jurisdiction over it and that such consent-based jurisdiction did not violate Due Process. Id. at 95.

Similarly, in Mallory, the Court considered whether a Pennsylvania court could preside over a case brought by a Virginia resident against a Virginia company resulting from the plaintiff's work for the defendant company in Ohio and Virginia. Mallory, 600 U.S. at 125. In Mallory, after the plaintiff had ceased working for the defendant, he lived in Pennsylvania for a time before moving to Virginia. Id. Along the way, he was diagnosed with cancer that was attributed to his work for the defendant. Id. As a result, the plaintiff hired Pennsylvania lawyers and sued the defendant in Pennsylvania under the Federal Employers' Liability Act. Id. The defendant attempted to resist the plaintiff's suit, claiming the exercise of general personal jurisdiction over it by Pennsylvania courts violated Due Process. Id. However, the plaintiff argued in response that Pennsylvania courts had jurisdiction over the defendant company because it had "filed paperwork consenting to appear in Pennsylvania courts as a condition of registering to do business in the Commonwealth." Id.

The Supreme Court agreed with the plaintiff, recognizing that its holding in Pennsylvania Fire controlled the case.  Id. at 134.  Because the defendant had registered to do business in Pennsylvania pursuant to § 411, which required the defendant to establish and maintain a registered office in Pennsylvania, the Court held that the defendant had agreed to be "amenabl[e] to suit in [Pennsylvania] state court on any claim."  Id. at 135 (emphasis added); see also 42 PA. CONS. STAT. § 5301 ("When jurisdiction over a person is based upon this section any cause of action may be asserted against him, whether or not from acts enumerated in this section . . . .")  In other words, by registering to do business in Pennsylvania and establishing an office there to receive service of process, the defendant consented to being subject to any suit in Pennsylvania.  See id.

Here, because Defendant did not appoint an agent for service of process in any suit in Pennsylvania, the Supreme Court's holdings in Pennsylvania Fire and Mallory are inapplicable. As noted above, Defendant is a foreign insurance company that holds a Certificate of Authority to do insurance business in Pennsylvania pursuant to § 46.  Defendant is not registered to do business in Pennsylvania under § 411.  As such, Defendant has only appointed an agent in Pennsylvania, who is "the Secretary of the Commonwealth and his successor or successors in office," to accept service of process for the limited types of claims permitted to be brought against it by § 46.   See 40 PA. STAT. AND CONS. STAT. § 46(d)(1) ("The performance by an insurance company . . . of any act which constitutes the doing of an insurance business within this Commonwealth is equivalent to and shall constitute an appointment by such company . . . of the Secretary of the Commonwealth and his successor or successors in office as its true and lawful attorney upon whom may be served all lawful process in any action, suit or proceeding instituted by or on behalf of the Insurance Commissioner against it arising out of a violation of this section, and the performance of any such act shall be signification of its agreement that such service of process is of the same legal force

18

and validity as personal service of process in this Commonwealth upon such company . . . .")
(emphasis added).

Therefore, unlike the defendants in Pennsylvania Fire and Mallory that agreed to be subject
to suit in Missouri and Pennsylvania on any claim, Defendant has only consented to suit in
Pennsylvania on claims arising out of a violation of § 46 brought by or on behalf of the Insurance
Commissioner.   See 40 PA. STAT. AND CONS. STAT. § 46(d)(1).  As mentioned earlier, a foreign
insurance company violates § 46 by performing insurance business in Pennsylvania without having
obtained a Certificate of Authority.  See 40 PA. STAT. AND CONS. STAT. § 46(b).  However, as noted
above, the instant case essentially arises out of Defendant's alleged breach of contract and related
claims rather than a violation of § 46 and was brought by a medical testing laboratory business on
its own behalf rather than by or on behalf of the Insurance Commissioner.  As such, this case does
not fit within the limited types of claims permitted by § 46 to be brought against Defendant in
Pennsylvania.  Accordingly, because Defendant has not consented to be subject to jurisdiction in
Pennsylvania in a case such as this one and is not otherwise "at home" in Pennsylvania, this Court
lacks general personal jurisdiction over Defendant.

### B.    The Court Lacks Specific Personal Jurisdiction Over Defendant

As discussed above, "[p]ersonal jurisdiction may be either general or specific."  General
Elec. Co., 270 F.3d at 150.  While the Court concluded, supra, that it does not have general personal
jurisdiction over Defendant, personal jurisdiction may arise over a defendant through specific
personal jurisdiction.  The test for specific jurisdiction entails a three-step analysis.  D'Jamoos ex
rel. Est. of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009).  First, a court must
evaluate whether the defendant established minimum contacts by "deliberately 'reach[ing] out
beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a
contractual relationship centered there."  Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S.

351, 359 (2021) (quoting <u>Walden v. Fiore</u>, 571 U.S. 277, 285 (2014)).  Second, the court must

determine whether the litigation "arise[s] out of or relate[s] to" at least one of those contacts.  <u>Id.</u>

at 352 (quoting <u>Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S. F. Cnty.</u>, 582 U.S. 255, 262

(2017)).  Third, if the first two requirements are met, a court may consider whether exercising

personal jurisdiction over the defendant "offend[s] traditional notions of fair play and substantial

justice."  <u>Id.</u> at 358 (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316-17 (1945)).

Here, the Court lacks specific jurisdiction over Defendant for two reasons.  First, Plaintiff

conceded that the Court does not have specific jurisdiction over Defendant by failing to address

Defendant's arguments against specific jurisdiction in its Response in Opposition to Defendant's

Motion to Dismiss the First Amended Complaint.  (<u>See</u> Doc. No. 9); <u>see also</u> <u>Celestial Cmty. Dev.</u>

<u>Corp. v. City of Phila.</u>, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012) ("To put it simply: plaintiffs who

fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts

of the motions to dismiss granted as uncontested."); <u>Cook v. W. Homestead Police Dep't</u>, No. 16-

1292, 2017 WL 1550190, at *3 (W.D. Pa. May 1, 2017) ("Plaintiffs' failure to respond at all to

[Defendant's] arguments for dismissal . . . will be read as a concession of those arguments, if not

a waiver of those issues.")  In its Brief in Support of its Motion to Dismiss, Defendant focused the

majority of its personal jurisdiction argument on the Court's lack of specific jurisdiction over it.

(<u>See</u> Doc. No. 8-1 at 12-17.)  However, in its Response in Opposition, Plaintiff focused its

argument in favor of personal jurisdiction only on the possibility of the Court having general

jurisdiction over Defendant.  (<u>See</u> Doc. No. 9 at 7-9.)  Thus, by not responding to Defendant's

argument on specific jurisdiction, Plaintiff conceded that the Court lacks specific jurisdiction over

Defendant.

Second, notwithstanding Plaintiff's concession that the Court does not have specific jurisdiction over Defendant, Defendant did not establish minimum contacts in Pennsylvania. In the Amended Complaint, Plaintiff only relies on the following contacts of Defendant's with Pennsylvania: (1) as discussed supra, Defendant, as a foreign insurance corporation, obtained a Certificate of Authority to do insurance business in Pennsylvania; (2) unnamed medical service providers sent specimens provided by patients insured by Defendant to Plaintiff's Pennsylvania laboratory facility for testing; and (3) Plaintiff communicated with Defendant regarding payment for its laboratory testing services on the specimen provided by Defendant's insured members. (See Doc. No. 6.) But these contacts are not enough to establish specific jurisdiction over Defendant in Pennsylvania.

Other than Defendant possessing the Pennsylvania Certificate of Authority, its only contacts with Pennsylvania were initiated by either Plaintiff or third parties. And "the unilateral activity of another party or third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with the forum State to justify an assertion of jurisdiction." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984). Moreover, merely having a Certificate of Authority is not enough to establish minimum contacts in Pennsylvania. See Rivers v. Am. Century Life Ins. Co., No. 22-1476, 2023 WL 2920285, at *3 (E.D. Pa. Apr. 12, 2023) (holding that where the defendant insurance company held a Pennsylvania Certificate of Authority, but did not have office locations or employees in Pennsylvania, "[n]one of [the] evidence supports a finding that the necessary contacts between [the defendant] and [Pennsylvania] exist to permit the constitutional exercise of specific . . . personal jurisdiction over it by this Court").

Furthermore, courts considering near-identical facts have held that these types of contacts with the forum state are insufficient to establish specific jurisdiction. See Abira Med. Labs., LLC v. Blue Cross Blue Shield of Miss., No. 23-4974, 2024 WL 3783574, at *3 (E.D. Pa. Aug. 13, 2024) ("The only contacts that [the plaintiff] contends [the defendant insurance company] has with Pennsylvania are (1) laboratory samples [that] were sent to [the plaintiff] for testing; (2) [the plaintiff] requested payment from [the defendant] for these services, some of which were paid out by [the defendant]; and (3) [the defendant's] representatives intermittently communicated with [the plaintiff] for payment of submitted tests. Regardless of whether these contacts transpired in the manner that [the plaintiff] contends, they simply do not demonstrate that [the defendant] has sufficient contacts with Pennsylvania to warrant the assertion of personal jurisdiction over it in this case."); Abira Med. Labs., LLC v. Centene Corp., No 23-5057, 2024 WL 3792224, at *3 (E.D. Pa. Aug. 13, 2024) (concluding the defendant insurance company's contacts with Pennsylvania, namely "(1) communication with [the plaintiff] over more than five years; (2) collection of samples before sending them to [the plaintiff's] Pennsylvania laboratory for testing; and (3) the resulting testing and invoices generated by [the plaintiff] and forwarded to [the defendant]," were insufficient "contacts to demonstrate the deliberate targeting necessary to establish specific jurisdiction"); Abira Med. Labs., LLC v. Anthem Blue Cross Blue Shield Missouri, No. 23-4940, 2024 WL 1704981, at *3 (E.D. Pa. Apr. 19, 2024) (holding the defendant's only contacts with Pennsylvania, "1) laboratory samples [] sent to [the plaintiff's] Pennsylvania facility for testing; (2) [the plaintiff] subsequently requested reimbursement from [the defendant insurance company] for these services; and, (3) [the defendant] periodically communicated with [the plaintiff] regarding these reimbursement requests," were insufficient to establish specific jurisdiction).

Here, just as the defendant insurance companies' contacts with Pennsylvania in the above-listed cases were not enough to establish minimum contacts, Defendant's near-identical contacts with Pennsylvania are also not enough to establish minimum contacts. As such, the Court does not have specific jurisdiction over Defendant. Accordingly, without general or specific jurisdiction, the Court lacks personal jurisdiction over Defendant. And, as noted previously, because a lack of personal jurisdiction is fatal to the Court's ability to hear the case, the Court need not reach Defendant's standing and failure to state a claim arguments.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 8) will be granted. An appropriate Order follows.